IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELLE L. WALTON and TERRANCE
W. DUNNE,

          Plaintiffs,

                                       3:15-CV-1488-PK

v.

                                       FINDINGS AND
                                       RECOMMENDATION

AUTO SOLUTION INC. and NATIONWIDE
MUTUAL INSURANCE COMPANY,

          Defendants.

PAPAK, Magistrate Judge:

      Plaintiffs/counter defendants Michelle L. Walton and Terrance W. Dunne[1] filed this

action against defendant/counter claimant Auto Solution Inc. ("ASI") and defendant Nationwide

Mutual Insurance Company ("NMIC") in the Multnomah County Circuit Court on or around May

22, 2015. By and through their complaint as originally filed, plaintiffs alleged that they

purchased a truck from the defendants not realizing that defendants had concealed defects in the

---

    [1] Dunne is incorrectly identified in the electronic docket for this matter as "Terrance W.
Walton."

Page 1 - FINDINGS AND RECOMMENDATION

truck and misrepresented the number of miles the truck had been driven. Arising out of that alleged concealment and misrepresentation, plaintiffs alleged ASI's liability under Oregon's Unlawful Trade Practices Act (the "UTPA") in four counts and under Oregon common law for fraud, additionally making the same claims against ASI's bond with its insurer, NMIC. On or around July 27, 2015, plaintiffs amended their complaint to add a claim of ASI's liability under the Federal Vehicle Information and Cost Savings Act (the "Odometer Act").

Effective August 7, 2015, defendant ASI removed plaintiffs' action to this court on the ground that this court has original federal-question jurisdiction over plaintiffs' Odometer Act claim, and may properly exercise supplemental jurisdiction over plaintiffs' state-law claims. On August 14, 2015, each defendant filed an answer to plaintiffs' complaint in this court, and ASI additionally filed a counterclaim against plaintiffs for its attorney fees. Plaintiffs amended their complaint in this court effective November 20, 2015, effecting no change to the parties or to the claims at issue in this action. On December 4, 2015, ASI answered plaintiffs' second amended complaint, maintaining its counterclaim for attorney fees, and on December 7, 2015, NMIC answered plaintiffs' amended complaint.

By and through their second amended complaint, plaintiffs seek award of actual, statutory, and non-economic damages in unspecified amounts, including treble damages in connection with their Odometer Act claim, and award of their attorney fees and costs, from both defendants. This court has federal-question jurisdiction over plaintiffs' Odometer Act claim pursuant to 28 U.S.C. § 1331, and may properly exercise supplemental jurisdiction over plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

Now before the court is ASI's motion (#29) for summary judgment, in which NMIC joins.

By and through ASI's motion, defendants seek summary adjudication in their favor of all of the plaintiffs' claims against them, or, in the alternative to summary judgment of the plaintiffs' fraud claim, summary adjudication in their favor of plaintiffs' prayer for non-economic damages in connection with the fraud claim; in addition, NMIC by and through its notice of joinder, challenges plaintiffs' authority to seek attorney fees from it in connection with their bond claim. In response to ASI's motion and NMIC's notice of joinder, plaintiffs voluntarily withdraw their prayer for non-economic damages in connection with their fraud claim, mooting defendants' alternative motion, and additionally withdraw their prayer for attorney fees from NMIC.

I have considered ASI's motion, oral argument on behalf of the parties, and all of the pleadings and papers on file.  For the reasons set forth below, ASI's motion should be granted as to plaintiffs' Odometer Act claim as alleged against both defendants, the court should decline to exercise supplemental jurisdiction over plaintiffs' state-law claims following dismissal of the sole claim over which this court has original jurisdiction, plaintiffs' state-law claims should be remanded to the Multnomah County Circuit Court, and ASI's motion should be denied as moot as to plaintiffs' state-law claims.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party taking the position that a material fact either "cannot be or is genuinely disputed" must support that position either by citation to specific evidence of record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials," by showing that the evidence of record does not establish either the presence or absence of such a dispute, or by showing that an opposing party is unable to produce sufficient admissible evidence to establish the presence or absence of such a dispute. Fed. R. Civ. P. 56(c). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## MATERIAL FACTS

### I.    The Parties

Plaintiffs Walton and Dunne are husband and wife, and apparently reside in Washington. Defendant ASI is in the business of buying and selling used motor vehicles, and is an Oregon corporation headquartered in Oregon. Defendant NMIC is in the insurance business and is headquartered in Ohio.

## II.    Material Factual History[2]

On or around January 17, 2013, defendant ASI purchased a used, diesel-engine 2004 Ford

F-250 (the "vehicle") from another used-car dealer for the purpose of selling it to an ASI

customer (David Schmidt) who had requested such a vehicle; ASI paid the other dealer $8,000

for the vehicle, the odometer of which at the time of purchase read 127,141 miles. *See*

Declaration of Mark Loebner ("Loebner Decl."), ¶ 3; Declaration of Jeremiah Ross ("Ross

Decl."), Exh. 5 (Deposition of Mark Loebner ("Loebner Depo.")), 29:10 – 31:18; Declaration of

David Schmidt ("Schmidt Decl."), ¶¶ 2-3. ASI subsequently sold the vehicle to Schmidt. *See*

Schmidt Decl., ¶ 5. Within a few days thereafter, the vehicle lost power while Schmidt was

driving it, and after he complained to ASI, ASI agreed to buy back the vehicle. *See id.*, ¶¶ 6-12;

Loebner Depo., 30:7-17. Within approximately one month of buying the vehicle back from

Schmidt, ASI submitted the vehicle to a third-party mechanic for inspection and repair. *See*

Loebner Depo., 34"10-25; Loebner Decl., ¶ 4. The mechanic repaired the vehicle's fuel injectors,

and reported that following those repairs the vehicle tested as "normal" and showed no On-Board

Diagnostic Trouble Codes ("DTC's"). *See id.* ASI thereafter continued listing the vehicle for

sale.

In May 2013, Jonathan Simons contacted ASI, indicating an interest in purchasing the

vehicle. *See* Declaration of Jonathan Simons ("Simons Decl."), ¶¶ 2-3. An ASI employee

---

[2] Except where otherwise indicated, the following recitation constitutes my construal of
the evidentiary record in light of the legal standard governing motions for summary judgment
under Federal Civil Procedure Rule 56.

Page 5 - FINDINGS AND RECOMMENDATION

advised Simons that ASI had just paid $1,000 for repairs on the vehicle,[3] and that he could purchase it without need for a mechanical inspection in consequence of those repairs. *See id.*, ¶ 4. Simons nevertheless arranged for a third-party mechanic to inspect the vehicle before he made the decision whether or not to purchase it. *See id.*, ¶¶ 5-6. Following that inspection, the mechanic advised Simon verbally and through a written inspection invoice that the vehicle had numerous mechanical and other problems, including intermittent power and bad tires. *See id.*, ¶¶ 7-9, Exh. 1.

Plaintiffs offer Simon's testimony that, after receiving the mechanic's report, Simons advised ASI that he did not wish to purchase the vehicle "because of the numerous mechanical issues with the truck that needed to be fixed." *Id.*, ¶ 10. Defendants offer the countervailing testimony of Dennis Hall, the ASI employee who communicated with Simons regarding his interest in purchasing the vehicle, that Simons did not explain to ASI his reasons for electing not to purchase the vehicle, *see* Declaration of Dennis Hall ("Hall Decl."), ¶¶ 2-3, and the testimony of Mark Loebner, ASI's principal and owner, that ASI never learned of any problems with the vehicle between the repair of its fuel injectors and plaintiffs' 2015 purchase of the vehicle, *see* Loebner Decl., ¶ 4. For purposes of determining the merits of ASI's summary judgment motion, I assume that Simons' testimony is accurate, but further assume that, other than as related by Simons, no ASI employee learned at any material time about mechanical problems with the vehicle.

Thereafter, the vehicle remained in ASI's inventory for nearly two years, during which

---

[3] In fact, it appears that ASI had been invoiced in the approximate amount of $800 in connection with the repairs effected following ASI's repurchase of the vehicle from Schmidt.

time it was seldom driven, and only for the purpose of performing errands or for occasional test

drives by potentially interested customers. *See* Loebner Decl., ¶ 4. During that time, ASI did not

observe any mechanical or other problems with the vehicle. *See id.*

In March 2015, ASI advertised the vehicle for sale at a price of $7,500,[4] inaccurately

listing its accrued mileage as 125,642 miles. *See* Declaration of Michelle Walton ("Walton

Decl."), ¶¶ 5-6, Exh. 1; Declaration of Terrance Dunne ("Dunne Decl."), ¶¶ 5-6, Exh. 1; Loebner

Depo., 44:10-14. At that time, ASI's website and advertisements contained an inaccurate

representation that ASI offered "CarFax vehicle history services" to its customers, although in

fact ASI had stopped providing assistance with such services some years before, offering instead

similar services provided by Experian. *See* Loebner Depo., 22:4 – 23:13.

On or around March 31, 2015, plaintiffs visited Fibre Credit Union seeking a loan to

purchase a vehicle suitable for hauling a travel trailer on road trips. *See* Deposition of Michelle

Walton ("Walton Depo."), 8:22 – 9:15, 10:1 – 11:23. While in the credit union's offices,

plaintiffs noticed the ASI advertisement listing the vehicle for sale for $7,500 and stating that the

vehicle had been driven 125,642 miles. *See id.* That same day, plaintiffs called ASI to inquire

about the vehicle, speaking with ASI sales consultant Nicole Lee. *See id.* Also that day,

plaintiffs went to ASI's sales lot to look over and test drive the vehicle for a period of 2-4 hours.

*See id.*, 11:20 – 12:17. Following his inspection and test drive of the vehicle, Dunne noted some

minor mechanical problems with the vehicle, including a missing rearview mirror and a problem

with the gas pedal, but concluded that the vehicle was "in good condition for the year and for the

---

[4] It appears that the 2013 Kelley Blue Book suggested retail value for a similar vehicle in
good condition had been $16,315. *See* Loebner Depo., 46:2-10.

price." Deposition of Terrance Dunne ("Dunne Depo."), 13:6 – 14:25. There is no suggestion in the record that plaintiffs noticed the discrepancy between the mileage statement in the advertisement and the actual odometer reading of the vehicle during the course of their inspection; there is likewise no suggestion in the record that the odometer was in any manner obscured from plaintiffs' view during the course of the inspection or test drive.

At that time, Lee advised plaintiffs that the vehicle had a CarFax report and that "everything was fine on it." Walton Depo., 14:21-24. Defendants offer Lee's testimony that she further advised plaintiffs (as was "[c]onsistent with [her] normal business practice") that they had the right to take the vehicle to a mechanic of their choice for an independent inspection, *see* Declaration of Nicole Lee ("Lee Decl. I"), ¶ 2, Supplemental Deposition of Nicole Lee ("Lee Decl. II"), ¶ 2, although plaintiffs offer Walton's testimony that Lee advised plaintiffs that any such inspection "had to be done" at the mechanic shop nearest to ASI's lot, Walton Depo., 17:17-23. For purposes of determining the merits of ASI's summary judgment motion, I assume that Lee advised plaintiffs both that they could have the vehicle inspected and that such inspection had to be performed by ASI's chosen mechanic.

Plaintiffs did not ultimately choose to have the vehicle inspected by any third-party mechanic. *See* Walton Depo., 24:21 – 25:12; Dunne Depo., 22:18-24. Also on March 31, 2015, but after plaintiffs left ASI's lot, at plaintiffs' request Lee emailed plaintiffs the invoice from the fuel-injector repair and inspection of early 2013. Lee Decl. I, ¶ 3; Walton Depo. 17:1-4. The invoice indicated that on an unspecified date a mechanic had repaired the vehicle's fuel injector and determined that the vehicle tested as "normal" and that the vehicle had "cleared DTC's." Lee Decl. I, Exh. 1 (the "Repair Invoice"). The Repair Invoice further indicated that, at the time the

Page 8 - FINDINGS AND RECOMMENDATION

repair to the fuel injectors had been effected, the vehicle odometer read 127,225 miles – greater mileage than had been listed in ASI's March 2015 advertisement. *See id.* Plaintiffs did not contemporaneously notice the discrepancy between the mileage statements in the advertisement and the mileage statement in the Repair Invoice. *See* Walton Depo., 17:5-12.

Either on March 31 or April 1, 2015, Lee faxed a copy of a three-page "Buyer's Order" to plaintiffs' credit union for loan approval purposes. *See* Lee Decl. I, ¶ 6. The copy of the Buyer's Order Lee faxed to the credit union was not signed by either plaintiff, although spaces were provided for their signatures, was signed on ASI's behalf by Lee, was dated as of March 31, 2015, and indicated that the vehicle had accrued mileage of 125,642 miles. *See* Lee Decl. I, Exh. 6 (the "Unsigned Buyer's Order"). Plaintiffs' credit union approved plaintiffs' vehicle-purchase loan on the basis of the information provided to it by and through the Unsigned Buyer's Order. *See* Declaration of Irene Heflin ("Heflin Decl."), ¶¶ 3-9.

Plaintiffs ultimately decided to purchase the vehicle, and returned to ASI on April 1, 2015, to consummate the purchase transaction. *See* Walton Depo., 12:18-25; Lee Decl. I, ¶ 4. On that day, plaintiffs signed a "Buyer's Order" provided to them by Lee.[5] *See* Lee Decl. I, ¶ 4. The three-page Buyer's Order actually signed by the plaintiffs was, like the Unsigned Buyer's Order, dated as of March 31, 2015. *See* Lee Decl. I., Exh. 2 (the "Signed Buyer's Order"). On its signature page, the Signed Buyer's Order expressly disclaimed all express or implied warranties in the vehicle, and expressly stated in bold font and all-capitalized letters that the vehicle was

---

[5] Dunne denies that he signed any Buyer's Order when he and Walton went to ASI's lot to purchase the vehicle, although he concedes that he did sign a Buyer's Order at some unspecified time. Dunne Depo., 20:4-24. The only Buyer's Order in the record that is signed by the plaintiffs, or either of them, is the one that Lee testifies was signed by plaintiffs in her office on April 1, 2015.

sold "AS IS – NOT EXPRESSLY WARRANTED OR GUARANTEED, WITH ALL

FAULTS." Signed Buyer's Order, p. 3 (emphasis original). In addition, the Signed Buyer's

Order states that plaintiffs purchased the vehicle "based on [their] personal inspection," and that

plaintiffs were "not relying upon any opinion, statement, promise or representation of [ASI] not

contained in the written agreements" memorializing the transaction. Signed Buyer's Order, p. 2.

The first page of the Signed Buyer's Order states the vehicle's accrued mileage as 128,456 miles.

*See id.*, p. 1. Both plaintiffs' signatures appear on the signature page of the Signed Buyer's Order.

*See id.*, p. 3. The Signed Buyer's Order is signed on behalf of ASI by an employee other than

Lee; although the ASI employee's signature is illegible it appears to begin with the letter "J." *See*

*id.*

   Defendants offer Lee's testimony that it was her "normal practice" to send a copy of a

Buyer's Order that was signed by her but not by a prospective purchaser to such a prospective

purchaser's loan provider for pre-approval purposes before consummating a vehicle purchase

transaction, Lee Decl. I, ¶ 6, and that it was customary after the purchase was ultimately agreed to

for her to present purchasers with a completely unsigned Buyer's Order, to obtain their signatures

on that order, and then to have the Buyer's Order signed by ASI's office manager, Janet Hartzler,

Lee Depo., 19:19 – 20:8. Plaintiffs testify to the contrary that the "only" Buyer's Order they

"ever" received from ASI was the Unsigned Buyer's Order, *see* Walton Decl., ¶ 10, Dunne Decl.,

¶ 10, which does not bear either plaintiff's signature, although they acknowledge that they did

sign a copy of a Buyer's Order in connection with consummating the purchase transaction, *see*

Walton Depo., 44:18 – 45:8, Dunne Depo., 20:13-14, and (in the case of Walton's testimony) that

at some unspecified "later" time they were provided with the Signed Buyer's order by ASI, *see*

Walton Depo., 44:3-13.

Also on April 1, 2015, Dunne signed a "Buyer's Guide" stating in large, bold font and all capital letters that the vehicle was being sold "**AS IS-NO WARRANTY**," that the buyers would be responsible "**FOR ANY REPAIRS**" to the vehicle, and that ASI "**assumes no responsibility for any repairs regardless of any oral statements about the vehicle.**" Lee Decl. I, Exh. 3 (the "Buyer's Guide") (emphasis original). The Buyer's Guide additionally lists "some major defects that may occur in used motor vehicles." *Id.*

Also on April 1, 2015, both plaintiffs signed a "Used Vehicle Inspection Policy" affirming that ASI had advised them of its policy to "encourage[]" buyers "to have any used vehicle . . . checked by an 'independent mechanic.'" Lee Decl. I, Exh. 4 (the "Used Vehicle Inspection Policy").

Also on April 1, 2015, Lee and Dunne signed a "Secure Odometer Disclosure/ Reassignment" form indicating that the vehicle had 128,456 miles at the time of the sale. *See* Lee Decl. I, ¶¶ 5-6; *see also* Lee Decl. I, Exh. 5 (the "Odometer Statement"). Plaintiffs offer the opinion testimony of a handwriting expert that the third digit ("8") of the odometer reading entry shows signs of having been superimposed on a previously written digit, most likely a "5." *See* Declaration of Hannah McFarland ("McFarland Decl."), ¶¶ 3-5. Defendants do not dispute that the "8" in the odometer reading entry might have overwritten a 5, but offer Lee's testimony that she herself personally filled out the Odometer Statement by physically examining the vehicle's odometer before preparing the final Buyer's Order for plaintiffs' signatures, and that if she overwrote another number when writing the "8" into the odometer reading entry box, she "would have done it at th[e] time [she inspected the odometer] in order to make a correction

when physically checking the odometer at the time of sale and prior to obtaining signatures from Plaintiffs." Lee Decl. I, ¶¶ 5-6; Lee Decl. II., ¶ 4.

Apparently also on April 1, 2015, both plaintiffs signed a "Vehicle Certificate of Ownership (Title) Application" for the purpose of obtaining registration of title to the vehicle from the State of Washington. *See* Lee Decl. I, ¶ 6. The application form signed by plaintiffs and initially presented to them states the vehicle's mileage at time of sale as 125,456 miles. *See* Lee Decl. I, Exh. 7 (the "Uncorrected Title Application"). Although the Uncorrected Title Application bears both plaintiffs' signatures, and contains space for notarization of their signatures, it is not in fact notarized. *See id.* Defendants offer Lee's testimony that after plaintiffs consummated purchase of the vehicle, she mailed them a corrected copy of the application form, correctly stating the vehicle's mileage. *See* Lee Decl. I, ¶ 6. The corrected application form states the mileage of the vehicle at time of sale as 128,456 miles. *See* Lee Decl. I, Exh. 8 (the "Corrected Title Application"). Plaintiffs signed the Corrected Title Application and returned it to ASI for notarization and submission to the Washington State Department of Licensing. The Corrected Title Application bears both plaintiffs' signatures in the spaces provided therefor, but in the space provided for their notarized signatures, it bears their names in another person's handwriting. *See id.* Perhaps oddly, the notarization of the signatures (by ASI office manager Hartzler) purportedly occurred in King County, Washington, while plaintiffs offer Walton's testimony that she has never been to King County. *See id.*; *see also* Walton Depo., 45:2-13. Hartzler concedes that plaintiffs were not in her presence when she purported to notarize the document, but suggests that that was standard procedure at ASI in connection with title applications. *See* Deposition of Janet Hartzler ("Hartzler Depo."), 34:4 – 37:2.

Plaintiffs' credit union ultimately received a $100 commission from ASI in connection with plaintiffs' purchase of the vehicle. *See* Loebner Depo., 18:11-21.

On the day after their purchase of the vehicle, plaintiffs observed that the vehicle's tires were in extremely poor condition, and on that same day they paid approximately $1,200 to replace both the tires and the rims. *See* Walton Decl., ¶¶ 16-17; Dunne Decl., ¶¶ 16-17. A few days later, the vehicle's engine died while Dunne was driving. *See* Dunne Decl., ¶ 18. Approximately two weeks after that, plaintiffs had the vehicle's EGR valves, air filters, battery, and rear-view mirror replaced at a cost of approximately $500. *See* Walton Decl., ¶ 18; Dunne Decl., ¶ 19. Since the time those repairs were effected, the vehicle remains "running" and in "[g]ood condition," Dunne Depo., 28:9-1, *see also* Walton Depo., 35:23-25 (vehicle is "operable" and "roadworthy" following the stated repairs), but plaintiffs nevertheless use it only "rarely" (to date, an estimated 20-30 times) out of fear that it may break down again, Dunne Depo., 29:13 – 30:6.

Walton testifies that she thereafter attempted to contact ASI both directly and through her credit union in an effort to discuss the problems plaintiffs were having with the vehicle, without success. *See* Walton Decl., ¶ 19. However, Loebner testifies (without providing documentary support) that on May 8, 2015, he received an email from Walton describing plaintiffs' difficulties, and that he both responded to the email that same day and subsequently spoke with Walton on the telephone, but did not hear back from plaintiffs thereafter. *See* Loebner Decl., ¶ 5.

This action followed.

## ANALYSIS

As noted above, the sole ground for removal of this action by ASI was federal-question

jurisdiction in connection with plaintiffs' Odometer Act claim.[6] I therefore consider first the merits of ASI's summary judgment motion as to the Odometer Act claim; because I conclude, as discussed below, that the Odometer Act claim is without merit on the facts of record, I recommend that summary judgment be entered in defendants' favor as to the Odometer Act claim, that the court decline to exercise supplemental jurisdiction over plaintiffs' state-law claims in the absence of any claim over which this court has original jurisdiction, that ASI's motion for summary judgment be denied as moot as to the plaintiffs' state-law claims, and that all of plaintiffs' state-law claims be remanded to the Multnomah County Circuit Court where they were first filed.

## I.    Plaintiffs' Odometer Act Claim

Plaintiffs allege ASI's direct liability and NMIC's indirect bond liability for violation of the federal Odometer Act, specifically by advertising the vehicle for sale with an incorrect statement of its accrued mileage, by presenting Dunne with the Odometer Statement for his signature at the time the transaction was consummated when it purportedly asserted that the vehicle's mileage was 125,456, thereafter modifying the statement to assert mileage of 128,456 miles, and by preparing the Unsigned Buyer's Order with an incorrect mileage statement, and providing that version of the Buyer's Order to plaintiffs' credit union for loan preapproval purposes and purportedly providing that same version of the Buyer's Order to plaintiffs at the time the transaction was consummated. The Odometer Act provides, in relevant part, as follows:

---

[6] Although the citizenship of the plaintiffs is not entirely clear from the pleadings or evidentiary record, because the amount in controversy between the parties appears to be well below $75,000, this court cannot appropriately exercise diversity jurisdiction over this action even if there is in fact complete diversity of the parties. *See* 28 U.S.C. § 1332.

Under regulations prescribed by the Secretary of Transportation that include the way in which information is disclosed and retained under this section, a person transferring ownership of a motor vehicle shall give the transferee the following written disclosure:

(A)    Disclosure of the cumulative mileage registered on the odometer.

(B)    Disclosure that the actual mileage is unknown, if the transferor knows that the odometer reading is different from the number of miles the vehicle has actually traveled.

49 U.S.C. § 32705(a)(1).  Similarly:

(c)    In connection with the transfer of ownership of a motor vehicle, each transferor shall disclose the mileage to the transferee in writing on the title or, except as noted below, on the document being used to reassign the title. In the case of a transferor in whose name the vehicle is titled, the transferor shall disclose the mileage on the title, and not on a reassignment document.  This written disclosure must be signed by the transferor, including the printed name.  * * *  In addition to the signature and printed name of the transferor, the written disclosure must contain the following information:

(1)    The odometer reading at the time of transfer (not to include tenths of miles);

* * *

* * *

(e)    In addition to the information provided under paragraphs (c) and (d) of this section,

(1)    The transferor shall certify that to the best of his knowledge the odometer reading reflects the actual mileage, or;

(2)    If the transferor knows that the odometer reading reflects the amount of mileage in excess of the designed mechanical odometer limit, he shall include a statement to that effect; or

(3)    If the transferor knows that the odometer reading differs from the mileage and that the difference is greater than that caused by odometer calibration error, he shall include a

> statement that the odometer reading does not reflect the
> actual mileage, and should not be relied upon.  This
> statement shall also include a warning notice to alert the
> transferee that a discrepancy exists between the odometer
> reading and the actual mileage.

49 C.F.R. § 580.5.

A private right of action is available to citizens damaged by a violation of the Odometer

Act committed with intent to defraud:

> (a)    Violation and Amount of Damages.—
>
> A person that violates this chapter or a regulation prescribed or order
> issued under this chapter, with intent to defraud, is liable for 3 times the
> actual damages or $10,000, whichever is greater.
>
> (b)    Civil Actions.—
>
> A person may bring a civil action to enforce a claim under this section in
> an appropriate United States district court or in another court of competent
> jurisdiction.  The action must be brought not later than 2 years after the
> claim accrues.  The court shall award costs and a reasonable attorney's fee
> to the person when a judgment is entered for that person.

49 U.S.C. § 32710.  The Ninth Circuit has held that the requisite intent to defraud must be

specifically with respect to fraudulent concealment of a vehicle's actual mileage.  *See Bodine v.*

*Graco, Inc.*, 533 F.3d 1145, 1151-1155 (9th Cir. 2008).  The Ninth Circuit does not appear to

have otherwise weighed in on interpretation of the Odometer Act in any material way.

The Fourth and Eighth Circuits, by contrast, have found that, under certain circumstances,

a motor vehicle seller can violate the Odometer Act by providing an incorrect pre-sale statement

of mileage and then failing to take reasonable steps to communicate the correct mileage to the

buyer before the sale is consummated.  *See Hughes v. Box*, 814 F.2d 498, 502 (8th Cir. 1987);

*Ryan v. Edwards*, 592 F.2d 756 (4th Cir. 1979).  In *Hughes*, a vehicle's title which had correctly

stated the vehicle's mileage to be 129,000 miles was physically altered to state mileage of

approximately 29,000 miles, after which the vehicle was sold several times. The final sale to the

plaintiff was at an auction, where the auction seller (CCA) did not possess title to the vehicle at

time of sale, but had been advised by the previous seller (Regency) that the vehicle's mileage was

approximately 30,000 miles; CCA so advised the buyer. Following the auction, CCA received

from Regency without explanation both the altered title and an accurate odometer statement to

the vehicle, and ultimately forwarded only the altered title to the buyer. Confronted with those

facts, the Eighth Circuit described and relied on *Ryan* to reason as follows:

> The thrust of defendants' argument is that they complied with the letter and the
> spirit of the statute, even though their initial representation to CAA concerning the
> van's mileage was incorrect. Defendants point to the fact that prior to the transfer
> of title by CAA to plaintiffs, Regency sent CAA a second odometer statement
> revealing that the van had over 100,000 miles on it. Relying on *Tusa v. Omaha
> Auto Auction, Inc.*, 712 F.2d 1248, 1253-54 (8th Cir. 1983), they assert that CAA
> was at fault for not forwarding the second mileage statement to plaintiffs and for
> failing to establish a system that would detect defendants' initial misrepresentation
> of the van's mileage.
>
> We find this case to be analogous to *Ryan v. Edwards*, 592 F.2d 756 (4th Cir.
> 1979), wherein the transferor, Edwards, placed an advertisement in a newspaper
> describing the automobile for sale as a "low mileage" vehicle. Ryan, responding
> to the advertisement, met with Edwards and was told by him that the vehicle's
> actual mileage was roughly 32,000 miles. Edwards also showed Ryan an
> odometer mileage statement incorrectly stating the vehicle's mileage. Ryan paid
> for and took possession of the vehicle. Several days later, Ryan received the title
> certificate to the car revealing that the vehicle had actually traveled 110,020 miles.
>
> The trial court ruled that [the Odometer Act] did not apply to the newspaper
> advertisement or to Edwards' oral statements and entered a judgment n.o.v. in
> Edwards' favor. The Fourth Circuit reversed the trial court's ruling and reinstated
> the verdict, stating: "A transferor cannot insulate himself from liability under the
> statute by completing the odometer mileage statement correctly, and then
> contradicting that statement with false oral claims." *Id.* at 761.
>
> The lesson of *Ryan* is that **a transferor of a motor vehicle cannot blow both hot**

**and cold with respect to a vehicle's actual mileage and then reasonably expect his actions to amount to compliance with the statute.** Given the broad purpose of the Act to protect motor vehicle purchasers from inaccurate mileage representations by sellers, **a transferor should, at the very least, have some duty to specifically and unambiguously alert the transferee to the fact that the transferor's initial representation of the vehicle's mileage was incorrect, and to make clear the vehicle's actual mileage.** This defendants failed to do.

Defendants make much of the fact that CAA failed to send the second odometer statement to plaintiffs. We note, however, that CAA is not a party to this lawsuit, and our concern is not with CAA's potential liability to plaintiffs. Moreover, even if CAA had forwarded to plaintiffs all the paperwork that defendants claim they sent to CAA, plaintiffs still would not have been sufficiently informed of the van's correct mileage. No one disputes that the original information defendants provided as to the vehicle's mileage was incorrect. Once defendants discovered that their initial representation was mistaken, they should have specifically pointed this out to CAA as soon as possible. Instead, [Regency's agent] allegedly forwarded the correct odometer statement to CAA without acknowledging that the mileage on the statement was materially different from what it was initially represented to be. Moreover, the title accompanying the statement incorrectly represented the van's mileage as being less than 100,000 miles. The contradictory nature of the documents, along with Regency's initial misrepresentation of the vehicle's actual mileage, can hardly be characterized as the type of disclosure contemplated by the Act. Accordingly, we conclude that there was sufficient evidence presented at trial for the jury to conclude that defendants had violated the Act.

*Hughes v. Box*, 814 F.2d 498, 501-502 (8th Cir. 1987) (emphasis supplied).

The court is thus called upon to make two determinations: is there a question of fact as to whether ASI actually or constructively failed to disclose the correct cumulative mileage of the vehicle to the plaintiffs in connection with the sale of the vehicle to the plaintiffs and, if so, is there a question of fact as to whether ASI did so with intent to defraud plaintiffs regarding the vehicle's actual accrued mileage. Accepting all of the undisputed evidence as true, resolving all evidentiary conflicts in plaintiffs' favor, and drawing all reasonable inferences from the evidence in the light most favorable to plaintiffs, plaintiffs' Odometer Act claim will not lie on the current

record.

    As to whether ASI failed to disclose the correct cumulative mileage of the vehicle to the

plaintiffs in connection with the vehicle's sale, the operative facts are that (i) prior to the sale,

ASI advertised the vehicle  inaccurately listing its accrued mileage as 125,642 miles, (ii) on the

day before the sale, plaintiffs inspected and test drove the vehicle at length, with unfettered

access to the vehicle's odometer, which (following completion of the test drive) read

approximately 128,456 miles, (iii) on the day before the sale, apparently while plaintiffs were

still considering whether or not to purchase the vehicle, ASI sent plaintiffs a copy of the Repair

Invoice reflecting that, at some time in 2013, the vehicle odometer had read 127,225 miles,

(iv) either on the day of the sale or on the day before, ASI faxed the Unsigned Buyer's Order to

plaintiffs' credit union, inaccurately stating the vehicle's accrued mileage as 125,642 miles, (v) on

the day of and in connection with the sale, ASI presented plaintiffs with the Signed Buyer's

Order, accurately stating the vehicle's mileage as 128,456 miles, and plaintiffs signed that copy of

the Buyer's Order, (vi) on the day of and in connection with the sale, ASI presented plaintiffs

with the Odometer Statement, which accurately states the vehicle's mileage as 128,456 miles but

appears at some point to have read 125,456 miles, (vii) on the day of the sale, and in connection

with registering the vehicle in Washington, ASI presented to plaintiffs the Uncorrected Title

Application, which inaccurately stated the vehicle's accrued mileage as 125,456 miles, and

(viii) some time shortly thereafter, ASI mailed plaintiffs the Corrected Title Application, which

accurately stated the vehicle's accrued mileage as 128,456 miles.

    It is far from clear that a finder of fact could reasonably conclude from the foregoing facts

that ASI failed to disclose the correct cumulative mileage of the vehicle to the plaintiffs in

Page 19 - FINDINGS AND RECOMMENDATION

connection with the vehicle's sale. First, although plaintiffs seek wherever possible to call into question the authenticity of the evidence ASI has proffered, there is no evidentiary support either for the proposition that ASI did not present plaintiffs at time of sale with the Signed Buyer's Order which correctly states the vehicle's mileage, or for the proposition that the Odometer Statement stated a different mileage at the time it was presented to the plaintiffs. The conclusion is therefore compelling that ASI in fact correctly disclosed the vehicle's mileage to the plaintiffs at the time of the sale.

Second, to the extent plaintiffs seek to rely on *Hughes* and *Ryan* for the proposition that ASI improperly blew "both hot and cold with respect to [the] vehicle's actual mileage" without then "specifically and unambiguously alert[ing] the transferee[s] to the fact that the transferor's initial representation of the vehicle's mileage was incorrect, and . . . mak[ing] clear the vehicle's actual mileage," *Hughes*, 814 F.2d at 502, such reliance appears almost entirely inapposite, in that ASI did in fact provide accurate statements of the vehicle's actual mileage at the time of the sale, and although ASI additionally provided an inaccurate statement of the vehicle's mileage at the time of sale on the Uncorrected Title Application, they specifically and unambiguously corrected that error by mailing plaintiffs the Corrected Title Application shortly thereafter. Even on the *arguendo* assumption that the Ninth Circuit would adopt the reasoning of the *Hughes* and *Ryan* courts, it therefore appears that ASI complied with its obligation under the Odometer Act as those courts construed it.

On the further *arguendo* assumption that a finder of fact could nevertheless reasonably conclude that ASI violated its obligation to disclose the vehicle's actual mileage through its March 2015 advertisement, through its provision of the Unsigned Buyer's Order to plaintiffs'

credit union for loan pre-approval purposes, through its alteration of the Odometer Statement, and/or through its presentation of the Uncorrected Title Application to the plaintiffs for their signatures, a finder of fact could not reasonably conclude that ASI did so with specific intent to defraud plaintiffs as to the vehicle's correct mileage. First, it is difficult to reconcile the proposition that ASI harbored an intent to defraud plaintiffs as to the vehicle's correct mileage with ASI's provision to plaintiffs of unfettered and prolonged access to the vehicle's odometer. Second, the fact that ASI faxed plaintiffs the Repair Invoice without first altering it or obscuring its statement of mileage is inconsistent with the proposition that ASI intended to misrepresent the vehicle's mileage as 125,642 miles. Third, ASI's provision to plaintiffs of several correct statements of the vehicle's mileage in connection with the actual transfer of the vehicle is likewise inconsistent with the proposition that ASI harbored the requisite intent to defraud. Fourth, ASI's swift issuance of the Corrected Title Application bearing the correct statement of the vehicle's mileage is similarly inconsistent with the proposition that ASI intended plaintiffs to remain unaware of the vehicle's correct mileage. Fifth, it is difficult to reconcile the proposition that ASI intended to fraudulently conceal the vehicle's actual mileage through misrepresentation with the magnitude of the discrepancy between the inaccurate mileage disclosures and the accurate mileage (*i.e.*, a differential not calculated to have a significant impact on a reasonable person's decision whether or not to purchase the vehicle). Considering each of these facts together with ASI's undisputed inaccurate statements of the vehicle's mileage, a finder of fact could not reasonably conclude that ASI intended to prevent plaintiffs from learning the vehicle's correct mileage.

For the foregoing reasons, plaintiffs cannot assert a meritorious Odometer Act claim

Page 21 - FINDINGS AND RECOMMENDATION

against ASI or its bond with NMIC. ASI's motion should therefore be granted as to plaintiffs' Odometer Act claim, and summary judgment should issue on that claim in both defendants' favor.

## II.    Subject-Matter Jurisdiction Over Plaintiffs' State-Law Claims

In the absence of plaintiffs' Odometer Act claim, the only possible basis for the exercise of federal subject-matter jurisdiction over plaintiffs' state-law claims is continuing supplemental jurisdiction. However, following issuance of a defense judgment on the Odometer Act claim, this court should decline at this early stage of these proceedings to exercise such continuing supplemental jurisdiction, and instead should remand the state-law claims to the Multnomah County Circuit Court for lack of subject-matter jurisdiction. *See* 28 U.S.C. § 1367(c)(3) ("[t]he district courts may decline to exercise supplemental jurisdiction over a [state-law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of the factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims"). Nothing about these proceedings provides good cause for deviating from the general rule set forth in *Carnegie-Mellon*.

## CONCLUSION

For the reasons set forth above, ASI's motion (#29) should be granted as to plaintiffs' Odometer Act claim and the court should enter summary judgment as to that claim in both defendants' favor, the court should decline to exercise supplemental jurisdiction over plaintiffs'

state-law claims, plaintiffs' state-law claims should be remanded to the Multnomah County

Circuit Court, and ASI's motion should be denied as moot as to plaintiffs' state-law claims.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any,

are due fourteen (14) days from service of the Findings and Recommendation. If no objections

are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a

copy of the objections. When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will go under advisement.


Dated this 30th day of March, 2016.

Honorable Paul Papak
United States Magistrate Judge